Sarah Samantha **DANIELS**, Appellant,

v.

**The STATE of Texas, Appellee.**

**No. 14–99–00820–CR.**

Court of Appeals of Texas,
Houston (14th Dist.).

Aug. 3, 2000.

---

**40.** *Id.*

**41.** *Id.* (quoting *Carey v. Pure Distrib. Corp.,* 133 Tex. 31, 124 S.W.2d 847, 849 (Tex.1939)).

**42.** *Id.*

Mary B. Hennessy, Brenham, for appellant.

Charles J. Sebesta, Jr., Houston, for appellee.

Panel consists of Chief Justice MURPHY and Justices HUDSON and WITTIG.

## MAJORITY OPINION

DON WITTIG, Justice.

Appellant, Sara Samantha Daniels, was convicted by a jury of possession of less than five pounds but more than four ounces of marijuana. The jury assessed punishment of two years confinement, probated for five years. On this appeal, the primary issue we address is whether the court's erroneous admission of an unidentified confidential informant's hearsay statement that appellant was selling marijuana from her house was harmful. We also consider whether the trial court erred: (1) in denying appellant's motion to suppress evidence of the marijuana; (2) in refusing to compel identification of the State's confidential informant; and (3) in admitting a statement appellant made which she contends was illegally obtained during a custodial interrogation. We reverse and remand.

### Facts

Brenham Police officer Billy Rich received a tip from a confidential informant that appellant was selling marijuana out of her residence at 1314 Garrett in Brenham. Officer Larry Klehm went to appellant's house to conduct surveillance. From a distance, he observed two persons arrive at separate times, enter appellant's house, and leave after about a minute. Rich obtained a warrant to search the residence. The search yielded four baggies of marijuana, totaling 4.92 ounces. All of the marijuana was located in the kitchen.

Appellant filed a pre-trial motion to require disclosure of the informant's identity. At the hearing, Officer Rich acknowledged that the informant was paid and may have had a criminal history. Appellant argued that the informant's identity should be disclosed because: (1) the informant was present when appellant was alleged to have sold marijuana; (2) the informant was paid, therefore appellant wanted to examine his motives; and (3) there was an issue of entrapment. The court denied the motion.

At trial, Gloria McDonald testified on appellant's behalf that McDonald's two sons, aged 17 and 19 at the time of trial, lived with appellant when she was arrested. William Conway, who worked for appellant's employer, testified that appellant had passed a drug test shortly after her arrest. The defense rested. On rebuttal, Officer Rich testified, over appellant's objection, that his informant told him that a woman matching appellant's description was selling drugs from her residence at 1314 Garrett. Rich also testified that during the execution of the warrant, appellant admitted to him the marijuana was hers.

### Motion to Suppress

We first address appellant's complaint that the court erred in denying her motion to suppress because the warrant to search her house was obtained without probable cause. However, she provides no

grounds indicating the factors supporting this contention. The issue is not preserved for review. *See* TEX.R.APP. P. 33.1. Accordingly, we overrule this issue.

## Custodial Statement

■ Next, we address appellant's argument that the trial court erred in admitting Rich's testimony of an extra-judicial statement by appellant. Rich testified that while the search warrant was being executed, after the marijuana was discovered and appellant was in custody, he and appellant had a "conversation" in which she admitted that she bought the marijuana for her personal use. Appellant claims the oral statement was made during a custodial interrogation and was not admissible under article 38.22, § 3 of the code of criminal procedure. This provision states that an accused's oral statement made as a result of custodial interrogation is not admissible unless, among other things, the statement is recorded and, in the recording, the accused is properly given warnings and waives his or her rights contained in the warnings. *See* TEX.CODE CRIM. PROC., art. 38.22, § 3. Appellant's statement was not recorded.

We first observe that appellant's objection to the admission of the statement did not preserve her complaint for review. In a lengthy hearing outside the presence of the jury, appellant objected because her oral admission was not recorded and that it didn't "get around the requirements of the Constitution and the Code of Criminal Procedure requirements in a statement." In the same hearing, appellant also made extensive objections to other evidence that the State sought to admit. Thirty pages further into the record, when appellant's statement was finally introduced to the jury, appellant objected on the "same grounds previously urged." Appellant's proximal objection was to a statement on hearsay grounds. We hold the objection to admission of appellant's statement was not made with sufficient specificity or clarity to make the trial court aware of the complaint, nor were the specific grounds for the objection apparent from the context. *See* TEX.R.APP. P. 33.1(a)(1)(A). Therefore, appellant failed to preserve her complaint.

■ In any event, appellant did not show her statement was made during custodial interrogation. Article 38.22, section 3 is qualified by section 5 of article 38.22, which states, "Nothing in this article precludes the admission of a ... statement that does not stem from custodial interrogation...." TEX.CODE CRIM. PROC. ANN., art. 38.22, § 5. Interrogation encompasses any word or action on the part of the officers that they should know is reasonably likely to elicit an incriminating response from the suspect. *See Rhode Island v. Innis,* 446 U.S. 291, 301, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980). General and routine questions do not constitute interrogation. *See Jones v. State,* 795 S.W.2d 171, 174 n. 3 (Tex.Crim.App.1990). Other than a very vague reference to a "conversation," there is nothing to show that the officer asked appellant anything, or said or did anything that elicited appellant's admission and was thus interrogating her. The statement could as well have been *res gestae* or volunteered, in which case it would be admissible. Therefore, on the record before us, we have no way to determine that the statement was elicited through interrogation. We overrule this issue.

## Confidential Informant

■ Appellant argues the court erred in refusing to require disclosure of the confidential informant's identity. Texas Rule of Evidence 508(c)(2) requires the court hold an in camera hearing if it appears from the evidence that the informant "may be able to give testimony necessary to a fair determination of a material issue on ... guilt or innocence." TEX.R. EVID. 508(c)(2).

Appellant's pre-trial arguments did not trigger the requirement of an in camera hearing. Her unsupported assertion that

there was an issue of "entrapment" was nothing more than conjecture and speculation. *See Bodin v. State*, 816 S.W.2d 770, (Tex.App.–Houston [14thDist.] 1991). Nor were the facts that appellant was paid and that he may have had a criminal history require an in camera hearing. The informant's credibility and motives for providing the information leading to the investigation of appellant have no bearing on whether she was guilty or innocent of the possession offense. *See* Tex.R. Evid. 508(c)(2). Likewise, the informant was not present when appellant was alleged to have committed the charged offense and therefore had nothing to offer in that connection. As such, the informant's alleged knowledge of appellant selling drugs out of her house at one time does not bear on her guilt or innocence of the offense for which she was later arrested and charged.

Appellant also argues that the court later should have required identification of the confidential informant when Officer Rich testified of his out-of-court statement that appellant was selling drugs from her house. When the trial court allowed the rank hearsay statement bearing on an essential element of the crime (if it were not essential it would be irrelevant), another question is presented. The trial court then denied virtually all possible impeachment of the hearsay statement, its source and reliability, as well as any confrontation with the unknown, unidentified accuser. However, because of our disposition of the hearsay issue below, we need not address this issue. *See* Tex.R.App. P. 47.1.

### Hearsay

■ After appellant's witness testified she had tested negative for drug use, the State argued that appellant had "opened the door" to rebut her implied defense that she was not a drug user, thus the marijuana was not hers. The State thus wished to reintroduce Officer Rich to testify that his informant told him appellant sold marijuana. The court allowed the testimony over appellant's hearsay and right to confrontation objection.

■ The State is arguably correct that appellant opened the door to rebuttal testimony pertaining to her selling marijuana. Such a view has only one eye. Opening the door to testimony that would otherwise pertain to inadmissible subject matter does not mean that such testimony is necessarily invited into evidence in any form, including hearsay. *See Kipp v. State*, 876 S.W.2d 330, 337 (Tex.Crim.App. 1994) (plurality opinion). Opening the door may have expanded traditional materiality in this trial thus allowing proper proof of otherwise irrelevant material (the sale of marijuana). Relevance and hearsay, however, are quite different animals. The court must view this evidentiary admission thru two eyes: 1.Was the door opened to allow otherwise inadmissable evidence; and 2. Is the witness testifying from personal knowledge *See* Tex.R. Evid. 602 or is there an exception under Tex.R. Evid. 703 or 803. The State offered no exception to the hearsay rules that would render the out-of-court statement admissible and we are aware of none. Here the trial court allowed an officer to recount an out-of-court statement of an unidentified third party in order to prove the truth of the matters stated. That is the State sought to prove both the knowing possession of drugs and the selling of those drugs. This is classic "he said she said." We therefore conclude the informant's statement was inadmissible hearsay and the court thus erred in admitting it.

■ We next determine whether the court's error requires reversal. The admission of hearsay evidence against a criminal defendant implicates the Confrontation Clause of the Sixth Amendment because the defendant is not afforded the opportunity to confront the out-of-court declarant. *See Ohio v. Roberts*, 448 U.S. 56, 63, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980); *Guidry v. State*, 9 S.W.3d 133, 149 (Tex.Crim.App.1999). This denial of confrontation is compounded by the Kafka-

esque denial to the accused of the identity of her accuser. We therefore examine the error under Tex.R.App. P. 44.2(a), "Constitutional Error." Under this rule, we must reverse a judgment of conviction unless we determine beyond a reasonable doubt that the error did not contribute to the conviction or punishment.

In making our determination we examine the entire record in a neutral, impartial and even-handed manner and do not make our examination "in the light most favorable to the verdict." *See Harris v. State,* 790 S.W.2d 568, 586 (Tex.Crim. App.1989). If pursuant to our neutral review of the record we determine beyond a reasonable doubt that the nature of the error is such that the error could not have affected the jury, then the error is harmless; otherwise it is not. *Id.* at 586–87. In making our decision, we examine the error and all its effects such as (1) the source of the error, (2) the nature of the error, (3) to what extent the erroneous matter was emphasized by the State, (4) the probable collateral implications of the error, (5) how much weight a juror would probably place upon the error, and (6) whether declaring the error harmless would encourage the State to repeat it with impunity. *Id.* at 587–88. Then we determine whether a rational trier of fact might have reached a different result if the error and its effects had not occurred. *Id.* We do not focus on whether overwhelming evidence of appellant's guilt exists, or whether the jury would have convicted appellant if it had been compelled to rely only on the untainted trial evidence. *Id.* Nor do we review the evidence and decide appellant's guilt or innocence, thereby substituting our judgment for that of the trial court and jury. *Id.* at 585. Rather, our function is to determine whether the error might possibly have affected the jurors' decision. *Id.* at 587–88.

Under the first consideration, the State, with the approval of the court, was the source of the error. The nature of the error was constitutional. It was also one of substance, going to appellant's defensive theory.

The error was emphasized by the State, after the defense rested, to rebut a defensive theory. The State also made reference to the statement in closing argument: "Never once did you hear any evidence from the State that she was a dope user. We said she possessed dope. We said we had information that she sold dope."

One collateral implication of the error is that it allowed hearsay into evidence in violation of the Confrontation Clause. Another is that it served to lighten the State's burden to prove appellant's guilt by injecting inadmissible evidence.

It is difficult to determine how much weight a juror would probably place on the error. The jury was likely to have been strongly influenced to find appellant guilty by the fact that the marijuana was found in her house and Officer Rich's testimony that appellant admitted the marijuana was hers. On the other hand, the unknown informant's hearsay statement may have undermined appellant's defense that she was not a user or that it could have belonged to one of the teen age house members.

Finally, we believe our declaring the error harmless would encourage the State to repeat the error with impunity. It is difficult to imagine that the State could urge in good faith the hearsay statement was admissible. In arguing to the court that the statement was admissible, the prosecutor did not provide any valid hearsay objection. Rather, it skirted the issue altogether by stating the truism that appellant had opened the door to rebuttal. Similarly on appeal, the State does not confess error and focus on the only real issue of harm. If we declare this error harmless, we see little to discourage the State from repeating the practice of introducing inadmissable and harmful hearsay before our trial courts. Under the State's argument for hearsay admissibility, there would be little need to even have a trial with witnesses. Any detective or police

officer could take the stand and simply reiterate what all the witnesses, identified and unidentified, said. Hearsay is inherently untrustworthy. Hearsay from an unidentified source is scarcely more than rumor. The fair administration of justice should not and cannot tolerate the use of unidentified hearsay as a basis for conviction.

In light of these factors, we cannot say the error did not influence the jury's decision beyond a reasonable doubt. We sustain appellant's hearsay issue and reverse and remand for a new trial.

The judgment of the trial court is reversed and remanded.

J. HARVEY HUDSON, Justice, concurring.

The State's use of hearsay to affirmatively link appellant to possession of the marijuana found in her home was improper. Further, the error presented here rises to the level of "constitutional error." [1] However, one of the factors cited in *Harris v. State*, 790 S.W.2d 568, 586 (Tex. Crim.App.1989) and relied on by the majority in assessing the degree of harm, would convert Rule 44.2(a) into a punitive instrument for controlling wayward prosecutors. I believe it is the function of this court to decide each case upon its own merits. To speculate upon whether our decision will encourage prosecutors to knowingly inject error into future cases not only insults the many fine people who serve and represent the State of Texas, it improperly requires us to look outside the merits of the case *sub judice*.

Looking solely at the record before us, I cannot find beyond a reasonable doubt that the error did not contribute to the conviction. Accordingly, I concur in the result.

---

**1.** *But see Johnson v. State*, 967 S.W.2d 410, 417 (Tex.Crim.App.1998) (applying Rule 44.2(b), rather than Rule 44.2(a) to the erroneous admission of hearsay); *Armstead v. State*, 977 S.W.2d 791, 796 (Tex.App.-Fort Worth 1998, pet. ref'd).